UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES PENROSE, | 1:20-cv-00011-NLH |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

    *On behalf of Plaintiff*

STUART WEISS
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] under Title II of the Social

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number

Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, October 5, 2007.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On April 14, 2013, Plaintiff, James Penrose, protectively filed an application for DIB,[2] alleging that he became disabled on October 5, 2007.  Plaintiff claims that he can no longer work as a restoration supervisor and advertising display rotator because of his degenerative disc disease, carpal tunnel syndrome, traumatic brain injury, post-concussion syndrome, and an adjustment disorder, among other impairments.

On September 24, 2018, a second hearing on Plaintiff's claim was held before an ALJ.  Previously, the Appeals Council had reversed the decision of the same ALJ denying Plaintiff

---

of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant makes a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

benefits based on an unresolved conflict between a vocational expert's testimony and certain jobs the ALJ determined Plaintiff was capable of performing.  On January 14, 2019, the ALJ issued a second unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council November 12, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

5

### B.  Standard for DIB

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for

---

[3] The regulations were amended effective March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

6

determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every

7

element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease, carpal tunnel syndrome, traumatic brain injury, post-concussion syndrome, and an adjustment disorder were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions,[4] but that did not include

---

[4] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To

8

Plaintiff's past relevant work.  At step five, the ALJ considered hearing testimony from a vocational expert ("VE") and determined that Plaintiff was capable of performing other jobs in the national economy, such as a routing clerk, parking-lot attendant, and produce weigher.[5]

In his instant appeal of that decision, Plaintiff argues that the ALJ erred in his RFC determination, specifically with regard to the finding that he could frequently be exposed to hazards.  Plaintiff also challenges the ALJ's finding that his RFC rendered him capable of performing the three jobs suggested by the VE.

### 1. Whether the ALJ erred in the determination of Plaintiff's RFC

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner

---

determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[5] The ALJ also addressed the Appeals Council's directive that the ALJ consider whether Plaintiff's RFC rendered him capable of performing the jobs previously suggested by the VE at the prior hearing - bakery racker, laundry worker, and office cleaner.  The ALJ determined that because those jobs were quota-based or production-based, Plaintiff was not capable of performing those jobs.

9

rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

When making the RFC determination, the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured,

> the claimant had the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> except frequent pushing and pulling with the upper
> extremities; frequent climbing, balancing, stooping,
> kneeling, crouching, and crawling; frequent reaching,
> handling, fingering, and feeling; frequent exposure to
> hazards such as unprotected heights and moving machinery;
> unskilled work involving routine and repetitive tasks
> with occasional changes in the work setting; no quota or
> production based work but rather goal oriented work; and
> occasional interaction with coworkers, supervisors and
> the public.

(R. at 17.)

Plaintiff argues that the ALJ did not specify what impairment corresponded to the limitation on "hazards," but it appears that it is due to Plaintiff's vertigo. Plaintiff argues that the ALJ recognized Plaintiff's testimony that he experienced vertigo (R. at 18), and Plaintiff cites to a July 13, 2009 treatment summary letter prepared by Plaintiff's treating physician Dr. Patil that relates Plaintiff continued to experience vertigo (R. at 767). Plaintiff argues that under the regulations "'[f]requent' means occurring from one-third to two-thirds of the time," SSR 83-10,[6] and the ALJ committed error by not explaining how Plaintiff would be capable of being exposed to hazards such as unprotected heights and moving machinery for two-thirds of the time, but

---

[6] "Frequent" is in contrast to "occasionally," which "means occurring from very little up to one-third of the time." SSR 83-10.

11

not the other one-third of the time.

Plaintiff's argument is without merit.  In a detailed and comprehensive decision, the ALJ set forth the medical evidence concerning all of Plaintiff's claimed impairments, including that Plaintiff claimed he experienced vertigo.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements and [his spouse's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 27.)  The ALJ noted that "during the relevant period at issue between October 5, 2007, the alleged onset date, and June 30, 2009, the date last insured, the medical evidence of record indicates that a CT scan of the claimant's brain was normal (Exhibit 6F, page I) and an MRI of his brain intracranially was normal (Exhibit 6F, page 2)."  (Id.)

The ALJ additionally noted that by "February 2008, the claimant had progressed well with treatment and presented with no gross limitations in functional mobility (Exhibit SF, page 2) and he was capable of working from an orthopedic point of view (Exhibits I IF & 13F).  In July 2009, the claimant was found to have good balance (Exhibit 10F, page 18).  He had

12

full range of motion of the joints of both upper extremities; and muscle tone, muscle strength and sensation were intact in the upper extremities (Exhibit 10F, page 19)." (Id.)

For one specific example cited by the ALJ, in May 2010, a consultative medical provider, Dr. Maria Chiara Carta, examined Plaintiff and "stated that there was no clinical neurodiagnostic, neuroradiological or neurophysiological evidence of any injury to the claimant's brain and there was a discrepancy of his subjective complaints of forgetfulness, memory dysfunction with the very coherent and detailed history and report of all his symptoms and his medical treatment over the past three years." (R. at 26.)

With regard to the July 13, 2009 summary letter by Dr. Patil that related that Plaintiff continued to experience vertigo (R. at 767), the ALJ properly explained why he afforded little weight to Dr. Patil's opinion.[7] The ALJ

---

[7] An ALJ is required to state what weight he or she ascribes to a medical opinion, but not to other forms of medical evidence. Rafine v. Commissioner of Social Security, 2020 WL 3073829, at *5 (D.N.J. 2020). The ALJ here fulfilled his obligation to explain what weight he afforded to a medical opinion and why he assigned the weight as he did. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

13

discounted Dr. Patil's opinion mainly because it was inconsistent with the overall record, including the findings of Dr. Carta and the other medical sources.  (R. at 28.) This evidence, and more as thoroughly detailed in the ALJ's decision, substantially supports the ALJ's entire RFC determination, which encompasses the ALJ's minimally restrictive limitation on Plaintiff's exposure to hazards. See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019) (reiterating that the threshold for such evidentiary sufficiency under the substantial evidence standard is not high, and it "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citations omitted)).  The ALJ did not commit reversible error on this issue.

> **2.   Whether the ALJ erred at step five in relying upon the VE's testimony regarding three jobs Plaintiff could perform**

Once it has been determined that a claimant is not capable of performing her past relevant work, the burden shifts to the ALJ to show that the claimant's RFC permits the claimant to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(b)-(f). In this case, the ALJ determined that Plaintiff's RFC rendered him capable of performing three jobs based on the testimony of

the VE: routing clerk (DOT 222.687-022), which is unskilled and a light level of exertion, and exist in numbers of 47,286 in the national economy; parking lot attendant (DOT 915.473-010), which is unskilled and a light level of exertion, and exists in numbers of 41,212 in the national economy; and a produce weigher (DOT 299.587-010), which is unskilled and a light level of exertion, and exists in numbers of 4,449 in the national economy.  (R. at 30.)

Plaintiff challenges the ALJ's conclusion that he is capable of performing these jobs.  Plaintiff first argues that the jobs of routing clerk and parking lot attendant require exposure to hazards, and that because a more restrictive limitation on his exposure to hazards is required, these jobs are not available to him.  The Court has determined that the ALJ's limitation in this area was supported by substantial evidence, and therefore Plaintiff's RFC matches these positions.[8]

---

[8] SSR 85-15 provides, "A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or subject the individual or others to the risk of bodily injury. Surroundings which an individual may need to avoid because of impairment include those involving . . . recognized hazards such as unprotected elevations and dangerous moving machinery . . . .  Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [Vocational Specialist or

Plaintiff also argues that the ALJ's limitation of "no quota or production-based work, but rather goal-oriented work" in the RFC precludes the position of routing clerk because work on a conveyor belt is production-based work. Plaintiff further argues that the produce weigher job does not exist in significant numbers to qualify as the requisite "job that exists in the national economy,"[9] and it otherwise requires

---

Vocational Expert]." Here, the ALJ properly consulted the VE regarding whether a hypothetical claimant with Plaintiff's RFC would be capable of performing the suggested jobs.

[9] Plaintiff argues that 4,449 produce weigher jobs in the national economy does not constitute "significant numbers" and instead the VE should have provided, and the ALJ should have requested, the data regarding the incidence of this job in the regional economy. The Court notes, "[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act." Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013). Moreover, the regulations provide, "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1560(c)(1). Plaintiff cites to the Tenth and Ninth Circuits which question whether 4,449 jobs in the national economy constitutes significant numbers, but Plaintiff does not cite to Third Circuit precedent that holds similarly. Additionally, Plaintiff argues that the "ALJ did not rule that those 4,449 jobs alone are significant numbers of jobs, but that the aggregate jobs from three occupations — routing clerk, parking-lot attendant, and produce weigher — are significant." Although the ALJ did not specifically state that the numbers for each job individually existed in significant numbers, there is no indication that the ALJ aggregated the jobs numbers for all three jobs to make the determination that Plaintiff was capable of performing jobs with significant numbers. (See R. at 30, "Based on the testimony of the vocational expert at the hearing on remand, the undersigned concludes that, through the date last insured,

16

more public interaction than the RFC's limitation to "occasional" interaction with the public.

Even accepting that the routing clerk job and the produce weigher job were not viable options to Plaintiff as he argues, the ALJ found that Plaintiff was capable of performing the parking lot attendant position.  Other than challenging that job's exposure to hazards, which the Court has rejected, Plaintiff provides no other bases as to how the ALJ erred in finding that Plaintiff was capable of being a parking lot attendant.  At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy.  Substantial evidence supports the ALJ's finding that Plaintiff was capable of performing the parking lot attendant position.  See Sasse v. Commissioner of Social Security, 2019 WL 1233553, at *8 (D.N.J. 2019) (citing Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (explaining that SSA regulations provide that work

---

considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule.").

exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).

Consequently, the Court finds that the ALJ did not err at step five.

### III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).  For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of October 5, 2007 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.  An accompanying Order will be issued.

Date: December 23, 2020           s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.